REGINALD J. MURPHY ET UX.

*v.* STUART M. SMITH, INC.

[No. 723, September Term, 1982.]

*Decided February 4, 1983.*

The cause was argued before MOYLAN, LOWE and ALPERT, JJ.

*Thomas M. O'Malley,* with whom were *Gordon G. Ovington* and *Joseph D. Gallagher* on the brief, for appellants.

*William N. Zifchak,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Reginald J. Murphy, the primary appellant in this case, is a route salesman for Tastykake, Inc. Daily, in the early morning hours, he drove his van to a facility maintained as a pickup point for distribution of Tastykake products, loaded his van according to his needs and distributed the bakery goods to retailers. The product was brought to the pickup point by appellee, Stuart M. Smith, Inc. (a common carrier), from its Baltimore warehouse where it had previously been hauled by Smith from Philadelphia for disbursal.

Appellant declared that while loading his truck one early morning, due to defective lighting at the pickup point he failed to see the "stepping place" on the back of his truck misstepped, fell, and was injured. The suit, filed by Reginald J. Murphy and his wife, appears to be predicated upon a single breach of alternate duties allegedly owed by appellee to Murphy. The premises upon which Murphy was properly present were owned by appellees, and leased to Murphy's employer, Tastykake. They were, according to appellant, negligently operated or maintained. Presumably, appellant intended to prove that appellee had retained control of the area where the fall occurred and thus owed business invitees such as himself the duties accorded that class. The alternate duty is a contention that appellee owed Murphy the duty of an employer to provide a safe place of employment, under the MOSHA [1] Rule. This novel approach, that appellee owed Tastykake's employees such a duty, is, according to appellant set forth in Md. Ann. Code, Art. 89, § 32 (a) (1979 Repl. Vol.), which reads in pertinent part that:

> "Each employer shall (1) furnish to each of his employees employment and a place of employment

---

1. Maryland Occupational Safety and Health Act.

which are safe and healthful as well as free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees . . . ."

Appellants' primary complaint concerns the trial judge's instruction to the jury that, as a matter of law, any duties owed to Mr. Murphy pursuant to that section of the Code, were not applicable in this case because appellee Smith was not Mr. Murphy's employer. They also complain that no assumption of risk or contributory negligence instruction should have been given, and that no evidence should have been admitted to show that Tastykake had assumed responsibility for the premises where the accident had occurred. The last two of appellants' issues are apparently (although not clearly) two-edged. The allegations of instructional error regarding assumption of risk and contributory negligence, as well as the evidentiary complaint regarding the testimony that Tastykake had assumed the responsibility for maintaining that portion of the premises wherein appellants claim neglect, are clearly predicated upon the MOSHA concept and only impliedly in the alternative under the business invitee theory. We will dispose of the MOSHA duty contention first since it clearly applies to all three issues.

Citing *J. I. Hass Co. v. Dep't of Lic. and Reg.*, 275 Md. 321 (1975), and *Mardo Homes, Inc. v. Comm'r*, 35 Md. App. 260 (1977), appellants contend that in interpreting MOSHA we should be guided by the federal authorities interpreting OSHA (the federal Occupation Safety and Health Act, 29 U.S.C. § 651, *et seq.*). They then point to a series of federal cases which have applied a duty under certain circumstances upon someone other than an employer to maintain safe premises for another's employees.

One circumstance appeared where the local jurisdiction's OSHA statute specifically required the employer to keep the employment place safe "for employees." This was the statutory language before the D. C. courts in *Hewitt v.*

*Safeway Stores, Inc.,* 404 F.2d 1247 (D. C. Cir. 1968), and *Martin v. George Hyman Construction Co.,*[2] 395 A.2d 63 (1978), and which reveals these cases to be clearly inapposite.

A second circumstance was where the employer was, or could have been, found to have voluntarily assumed a duty to comply with OSHA regulations for the benefit of persons other than his own employees. To the extent that this circumstance was the basis for the court's holding in *Kelly v. Howard S. Wright Constr. Co.,* 90 Wash.2d 323, 582 P.2d 500 (1978), and partly the basis for the court's holding in *Rabar v. E. I. duPont de Nemours & Co., Inc.,* 415 A.2d 499 (Del. Super. 1980), neither case is apposite.

The third and final circumstance relates to owners or employers who have either actually created a hazardous condition which violated specific OSHA regulations and to which its own and another's employees were exposed, *Wendland v. Ridgefield Const. Services, Inc.,* 439 A.2d 954 (Conn. 1981), or had actual and substantial physical control over the work area, and actual responsibility for the hazardous condition.

The "actual control of the work area" circumstance is wholly or partly the basis for the court's holdings in *Brennan v. OSHC and Underhill,* 513 F.2d 1032 (2nd Cir., 1975), *Carroll v. Getty Oil Co.,* 498 F.Supp. 409 (D.C. Del. 1980), *Rabar v. E. I. duPont de Nemours & Co., Inc., supra.* These cases are not apposite because, in the instant case, Smith did not create and did not have actual physical control of alleged inadequate lighting conditions at the pickup point.

On the other hand, appellee points out that *Southeast Contractors, Inc. v. Dunlop,* 512 F.2d 675 (5th Cir. 1975); *Horn v. C. L. Osborn Contracting Co.,* 591 F.2d 318 (5th Cir. 1979); *Barrera v. E. I. duPont de Nemours & Co.,* 653 F.2d 915 (5th Cir. 1981); and *Melerine v. Avondale Shipyards,*

---

2. An additional feature in Martin v. George Hyman Construction Co., 395 A.2d 63 (1978), was the existence of non-OSHA state construction site regulations by which the employer was expressly bound, and which had been violated by it.

*Inc.,* 659 F.2d 706 (5th Cir. 1981), have flatly held that OSHA does *not* create a duty on behalf of an employer to any persons other than its own employees, regardless of any other factual circumstance presented.

Because we are a Court purposed to decide cases on the facts presented rather than proclaim in black letter the applicability of law for all purposes, we need not go to the extreme of the fifth circuit. It will suffice that under the facts of this case the Maryland Act is clearly limited, placing the duty on the "employer" for the benefit of "his employees". Rules of construction are to be resorted to only when there is a doubt, ambiguity, or uncertainty, and they are never to be used to create doubt, only to remove it. *John McShain, Inc. v. State,* 287 Md. 297, 301 (1980). This is another case for applying the canon of construction of the wag whom Justice Frankfurter quoted as saying when the legislative history is doubtful, go to the statute. *Greenwood v. United States,* 350 U.S. 366, 374 (1956). In doing so we find that neither its statutory language nor legislative intent can be stretched beyond the fair implication of the statute's words or its purpose. *Soper v. Montgomery County,* 294 Md. 331, 335 (1982). Because the issue had been injected into the case by appellants, the trial judge quite properly dispelled the jury's doubts by instructing that the statutory duty had no applicability in this case.

That leaves us to consider only whether under general tort principles the judge erred in permitting evidence of responsibility for the premises' lighting and whether assumption of risk and contributory negligence were proper considerations for the jury. We wonder that there can be any question.

Regarding the contributory negligence, it will suffice that a jury could have so concluded from appellant's own testimony, wherein he acknowledged that he did not look for the step until he had actually stepped —

"I looked and stepped at the same time, sir," —

despite the fact that he was operating in the dark while carrying a stack of cartons. A factfinder could also have concluded that appellant had assumed the risk of the injury from his testimony that there were three alternative routes to accomplish the purpose he was about, all three of which he had upon previous occasions considered and used. See *Burke v. Williams,* 244 Md. 154 (1966); *Benedetto v. Balto. Gas & Elec. Co.,* 30 Md. App. 171 (1976).

As to appellants' final contention, it is clear that the element of duty implicit in the issue of negligence relating to the possession and control of the premises, was the very issue generated by appellants' suit. They alleged that

> ". . . the premises were owned and operated by the defendant, Stuart M. Smith, Inc. a body corporate and said corporation leased the premises to Tastykake, Inc. a body corporate whom it knew to be the employer of the plaintiff, Reginald J. Murphy
> . . . ."

An obvious defense available to Smith is that the lease carried with it possession, control, maintenance *and responsibility,* either expressly or implicitly. Appellants' allegation of negligence, *i.e.,* that the lighting was inadequate, clearly lends itself to the obvious conclusion that the defect (if any) causing the accident was not inherent in the premises at the time of the leasing. To the contrary, an owner is not held, as a matter of law, as being responsible for changing defective light bulbs, a simple housekeeping function, on leased premises. Just as it is the responsibility of appellants to prove that the appellee owes them a duty which it breached, appellee has the commensurate right to produce evidence that the breached duty which allegedly caused the injury was the duty of one other than himself. In this case, where both owner and lessor utilized the premises, the issue narrowed to whether the lessor or the owner was in actual possession and control of the area in question. Evidence from the lessor and the owner of prior

understandings and subsequent assumptions of responsibility are clearly relevant.

*Judgment affirmed.*
*Costs to be paid by appellants.*